COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Haley


BRANDY WIMMER

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2424-05-3                            PER CURIAM
                                                      JANUARY 17, 2006
ROANOKE CITY DEPARTMENT OF
  SOCIAL SERVICES


             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                          Charles N. Dorsey, Judge

             (Eric Roland Spencer, on brief), for appellant.  Appellant submitting
             on brief.

             (William M. Hackworth, City Attorney; Heather P. Ferguson,
             Assistant City Attorney, on brief), for appellee. Appellee
             submitting on brief.

             (Diana M. Perkinson; Perkinson and Perkinson, on brief),
             Guardian *ad litem* for the infant children.  Guardian *ad litem*
             submitting on brief.


        Brandy Wimmer contends the trial court erred in terminating her parental rights to her

two minor children.  For the reasons stated below, we affirm the trial court's decision.

                                      Background

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

proved that on November 13, 2002, the Roanoke City Department of Social Services received a

complaint from a local hospital in connection with ML, then four months old.  ML had come to

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the hospital suffering from neurological problems, seizures, retinal hemorrhages, and respiratory difficulty.  The attending physician diagnosed her with shaken baby syndrome.  As a result, the Department obtained an emergency removal order, and Wimmer was charged with and convicted of felony child abuse.

ML has remained in the same foster home since her removal, but continues to suffer from numerous disabilities as a result of her injuries.  These disabilities include cortical blindness, developmental delays, and cerebral palsy.  Due to her limitations, she requires physical and occupational therapy on a weekly basis.

While ML was in foster care, Wimmer became pregnant.  She had a second daughter named MN, on October 28, 2003.  MN was removed immediately from the hospital and placed with her sister's foster parents.  Both girls are doing "extremely well" in foster care and are bonded to each other.

After ML was placed in foster care, the Department set goals for Wimmer in the initial foster care plan to achieve the goal of return home.  Among these goals, Wimmer was to complete parenting classes, maintain employment, and obtain safe, suitable housing.  The target date for the completion of these goals was July 2003.

Although Wimmer completed the parenting class, her instructor noted that her mother attended the classes with her and that Wimmer made no attempt to "participate independently from her mother."  Because Wimmer's mother answered all questions directed to Wimmer, the instructor questioned whether Wimmer "gained anything" from the class.

Wimmer remained unemployed from the time ML was removed through December 2003, at which time she faced trial on the felony child abuse charge.  During this time period, she also failed to find independent housing, and discontinued the psychological counseling sessions which had been recommended by the Department.  After Wimmer was convicted of felony child

abuse, she was immediately incarcerated. Shortly thereafter, the juvenile and domestic relations district court approved the Department's request for a change in goal to adoption.

Upon Wimmer's release from jail in October 2004, she obtained employment with a fast-food restaurant for approximately seven months; however, she lost this job shortly before the termination hearing in June 2005. Furthermore, she did not secure independent housing until late April 2005.

The trial court terminated Wimmer's parental rights on two grounds. First, it based its decision on Code § 16.1-283(E), finding that termination was in the best interests of the children and that Wimmer had subjected ML to "aggravated circumstances" under subsection (iv). In the alternative, it concluded termination was appropriate under Code § 16.1-283(C)(2) because Wimmer had "failed to remedy substantially the conditions which led to and required the continuation of [foster] care for a period in excess of twelve months notwithstanding the reasonable and appropriate efforts of social, medical, mental health and other rehabilitative agencies."

## Analysis

Wimmer argues the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(2) because she did not fail to correct the circumstances which led to her children being placed in foster care. However, because we find no error in the trial court's termination of Wimmer's parental rights under Code § 16.1-283(E), it is not necessary to address Wimmer's argument.

Code § 16.1-283(E)(iv) provides as follows:

> The residual rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the parent has subjected any child to aggravated circumstances.

As used in this section:

*"Aggravated circumstances"* means torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or a child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

\* \* \* \* \* \* \*

*"Serious bodily injury"* means bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

*"Severe abuse"* or *"severe sexual abuse"* may include an act or omission that occurred only once, but otherwise meets the definition of "aggravated circumstances."

Wimmer concedes that she was convicted of felony child abuse and that her appeal of this conviction has been denied. The underlying factual basis for her conviction clearly constituted "aggravated circumstances" under Code § 16.1-283(E)(iv). In addition, the trial court found that the Department presented clear and convincing evidence that termination of Wimmer's parental rights was in the best interests of the children. The voluminous evidence contained in the record, including the testimony of the numerous lay and expert witnesses, amply supports that ruling.[1] Accordingly, we will not disturb it on appeal.

We also reject Wimmer's argument that the trial court erred in terminating her parental rights to MN because the evidence relating to the felony abuse conviction pertained solely to ML. By its express language, Code § 16.1-283(E) does not limit the authority of the trial court to terminate parental rights only to children who are the direct victims of the parent's felonious

---

[1] Indeed, Wimmer offers no argument on appeal that termination is not in the best interests of the children.

- 4 -

assault. The express language of the statute permits the termination of parental rights of other children who would be endangered where a parent has feloniously assaulted one of his or her children. The obvious purpose of the statute is to allow the court to terminate a parent's rights when the parent's conduct poses a serious endangerment to a child's well-being without requiring that the court wait until the child is harmed before terminating the parent's rights.

In this instance, the trial court terminated Wimmer's parental rights to both children "pursuant to Virginia Code Section 16.1-283(E) and Virginia Code Section 16.1-283(C)(2), in the alternative, either ground sufficient on its own." Because we hold that the trial court's termination of Wimmer's parental rights under Code § 16.1-283(E)(iv) was amply supported by the record, we need not address Wimmer's argument that the trial court erred in terminating her rights under under Code § 16.1-283(C)(2). Where a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, we need not address the other grounds. See Boone v. C. Arthur Weaver Co., 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988).

Accordingly, for the reasons set forth herein, we affirm the trial court's decision terminating Wimmer's residual parental rights to both children.

Affirmed.